# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MONIQUE MARTIN** | **CIVIL ACTION** |
| **VERSUS** | **NO: 10-0073-LMA-SS** |
| **MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION** | |

## REPORT AND RECOMMENDATION

The plaintiff, Monique Martin ("Martin"), seeks judicial review, pursuant to Section 405(g) of the Social Security Act (the "Act"), of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1382(a)(3).

## PROCEDURAL HISTORY

On January 29, 2008, Martin submitted an application for SSI benefits.  R. 89-91.  She reported that she became disabled on August 27, 2005 from obesity, back problems, depression and high blood pressure.  R. 112.  On April 2, 2008, the Commissioner denied her claim.  R. 59-62.  On January 9, 2009, there was a hearing before an Administrative Law Judge ("ALJ").  R. 19-57. Martin waived her right to representation.  R. 22-24 and 88.  On June 3, 2009, the ALJ issued an unfavorable decision.  R. 6-18.  On November 13, 2009, the Appeals Council denied her request for review.  R. 1-3.

On January 13, 2010, Martin filed a complaint.  Rec. doc. 1. The parties submitted cross-motions for summary judgment.  Rec. doc. 14 and 15.  Martin was not represented in the administrative proceedings.  She is represented by counsel in federal court.

## STATEMENT OF ISSUES ON APPEAL

**Issue no. 1**.   Whether the ALJ failed to develop fully and fairly the administrative record.

**Issue no. 2**.   Whether the ALJ applied the proper legal standards in evaluating the medical opinion evidence and whether there was substantial evidence for the ALJ's findings.

**Issue no. 3**.   Whether the ALJ applied the proper legal standards in evaluating Martin's credibility and whether there was substantial evidence for the ALJ's findings.

**Issue no. 4**.   Whether the ALJ applied the proper legal standards in evaluating Martin's obesity and whether there was substantial evidence for the ALJ's findings.


## THE COMMISSIONER'S FINDINGS RELEVANT TO ISSUES ON APPEAL

The ALJ made the following findings relevant to the issues on appeal:

1. Martin has not engaged in substantial gainful activity since she filed her application on January 29, 2008 (20 CFR 416.971 *et seq*.).

2. Martin has the following severe impairments: depression; hypertension; and obesity (Stone v. Heckler, 752 F.2d 1099, 1101 (5th Cir. 1985), SSR 96-3p and 20 CFR 416.920©).

3. Martin does not have an impairment or combination of impairments that meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1(20 CFR 416.925 and 416.926).

4. Martin has the residual functional capacity to perform light work as defined in 20 CFR 416.976(b) except push/pull limited to light level; no climbing of ladders, ropes or scaffolds; no more than occasional climbing of ramps or stairs; no more than frequent stooping, crouching, kneeling, or crawling; no exposure to extreme heat/cold, moving machinery, or unprotected heights; work limited to simple, routine (1-2 step tasks) and repetitive tasks, in a low-stress job setting (defined as having no more than occasional changes in the job setting or decision making required), with no production rate or pace work.

5. Martin was unable to perform any past relevant work (20 CFR 416.965).

6. Martin, who was born in 1971, was a younger individual age on the date the application was filed (20 CFR 416.963).

7. Martin has a limited education and is able to communicate in English (20 CFR 416.964).

8.    Transferability of job skills is not an issue in this case because Martin's past relevant work is unskilled (20 CFR 416.968).

9.    Considering Martin's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform (20 CFR 416.969 and 416.969a).

10.   Martin has not been under a disability, as defined in the Social Security Act, since she filed her application (20 CFR 416.920(g).

R. 11-18.

## ANALYSIS

a.    **Standard of Review.**

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005); Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971); Perez, 415 F.3d at 461. Alternatively, substantial evidence may be described as that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000). This court may not re-weigh the evidence, try the issues *de novo* or substitute its judgment for the Commissioner's. Perez, 415 F.3d at 461; Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).

The administrative law judge is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. See Arkansas v. Oklahoma,

503 U.S. 91, 113, 112 S.Ct. 1046, 1060 (1992).  Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it.  Villa, 895 F.2d at 1022; Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).  Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive.  Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995).

To be considered disabled and eligible for disability insurance benefits, plaintiff must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability.  20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (1997).  The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.  Id. §§ 404.1520, 416.920; Perez v. Barnhart, 415 F.3d at 461; Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 514 U.S. 1120, 115 S. Ct. 1984 (1995).[1]  The five-step

---

[1] The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled.  Id. §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence.  Id. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated.  If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled.  Id. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education and work experience are considered to see whether he or she can meet the physical and mental demands

inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled. Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995).

The claimant has the burden of proof under the first four parts of the inquiry. Id. If she successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy, which the claimant is capable of performing. Greenspan, 38 F.3d at 236; Kraemer v. Sullivan, 885 F.2d 206, 208 (5th Cir. 1989). When the Commissioner shows that the claimant is capable of engaging in alternative employment, "the ultimate burden of persuasion shifts back to the claimant." Id.; accord Selders, 914 F.2d at 618.

"In determining whether substantial evidence of disability exists, this court weighs four factors: (1) objective medical evidence; (2) diagnoses and opinions; (3) the claimant's subjective medical evidence of pain and disability; and (4) the claimant's age, education, and work history." Perez v. Barnhart, 415 F.3d at 462. "The Commissioner, rather than the courts, must resolve conflicts in the evidence." Martinez v. Chater, 64 F.3d 172, 174 (5th Cir. 1995).

b.     **Testimony at the Hearing.**

The ALJ asked Martin if there was anything she wanted to add to the record. R. 25. In order to complete the record, she needed records from NOLA Health Solution and Holistic Concept. R. 26. The ALJ stated that he would hold the record open until February 13, 2009 so that the medical records could be obtained. R. 27-28.

---

of a significant number of jobs in the national economy. If the claimant cannot meet the demands, he or she will be found disabled. Id. §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 (1994) ("Medical-Vocational Guidelines").

Martin was born in 1971.  R. 31.  She completed the seventh grade.  R. 33.  She received vocational training for cooking in 2000.  R. 33.  She was single.  R. 31.  She had five children.  R. 31.  She took care of her personal needs.  R. 48.  She had a driver's license.  R. 48.  She could do normal activities like cleaning and cooking.  When she needed help, her children helped her.  R. 33 and 48.  She took care of her one year old grandchild all day.  R. 45.  She received $1,120 a month for her children and paid $985 a month in rent.  R. 33.  She received food stamps of $611 a month. She did not receive Section 8 assistance.  R. 34.

Martin worked at Burger King in 2007 for three weeks.  R. 35.  Her earnings statement reported that she earned $12,000 in 2007.  She did not recall earning that much in 2007.  R. 36.  She could not remember whether she worked any place other than Burger King in 2007.  R. 36.  In April 2008, she worked for Mandina's restaurant for two days a week for about a month.  R. 34. She was fired for missing a day.  R. 35.  Burger King and Mandina's were the only places she worked after Hurricane Katrina.  R. 37.

Martin weighed 316 pounds and was five feet six inches tall.  R. 31.  She considered 180 pounds as her normal weight, but she had been over her normal weight since the birth of her last child.  R. 31.  Her weight gain was caused by depression.  R. 32.

In 1992, Martin was pregnant.  Her boy friend molested her five year old daughter.  R. 32. She moved to the West Bank to be away from him.  R. 32.  In 1995, she began going to the mental health clinic.  R. 32.  Medication made her feel a little better, but it got to where the depression was always bothering her.  R. 32.  If she got a job, she would work for about two weeks.  R. 32. She could not get motivated to work.  She lost interest in things.  She was always late.  She forgot the

small things that needed to be done on the job.  Sometimes she was fired, but most of the time she

quit because she could not function on the job.  R. 32.

Martin wanted surgery for a tummy tuck and breast reduction. R. 39.  The doctor wanted her

blood pressure under control before she could have the surgery.  The doctor told her to lose 50

pounds.  The depression made her eat.  As long as she was eating, everything was alright.  R. 40-41.

If she did not have anything to eat, she was in a down mood and cried.  R. 41.  She had a habit of

twisting or playing with her hair.  She said it was caused by her nervous condition.  While she was

watching TV, something would make her jump up.  R. 41.

At the time of the hearing Martin was not taking medication for high blood pressure.  The

Algiers Fisher clinic lost her file and she could not remember the name of the medication.  For the

two months before the hearing she had not taken her high blood pressure medication.  R. 37-38.  She

reported that she was to receive a refill of this medication immediately after the hearing.  R. 38.

Martin got headaches almost every day.  R. 39-40.  She suffered from back problems.  R. 38.

She experienced severe low back pain when she tried to get out of bed in the morning.  R. 39.  As

long as she took Tramadol she was okay, but if she slipped and missed a day, her back hurt.  R. 39.

She used a hot towel soaked with alcohol to help relieve her back pain.  R. 41.  Her sleeping was not

good.  If she went to bed late at night, she was up early.  She took medicine to help her sleep but she

continued to have problems.  R. 42.

Martin could walk a mile or two before her heart began to race or she experienced a panic

attack.  She did not like to walk.  Most of the time she caught rides or took a cab.  R. 43.  As long

as she was leaning against a wall, she could stand for about two hours.  If she was not leaning, she

had to sit down after about half an hour.  R. 44.  If she watched television, she could sit two to three

hours.  But if she sat too long, something happened and she could not sit any longer.  It was as though she lost patience.  She could not ride in a car for long before she had to get out.  R. 44.  The heaviest thing Martin could lift was her grandchild who weighed about 18 pounds.  R. 45.  She was right-handed.  R. 45.  She did not have problems with her arms and hands.  She could reach small objects, pick them up and move them around.  R. 45.  She could climb stairs.  There were three flights of stairs at her house.  She stayed on the third floor of the house.  Her children used the second floor.  When she went downstairs, she was there to stay.  R. 46.

Martin had trouble with her concentration. R. 46-47.  She was antisocial.  She talked to her children.  She had a friend who lived in Mississippi.  She was an only child.  Her parents were deceased.  R. 47.

In a normal week Martin had about two and a half good days and the rest were bad days.  R. 49.  She would not get out of bed on a bad day unless there was a compelling reason.  R. 50.  On average she spent about eight hours a day lying down.  R. 50.  She spent the majority of her time praying and reading the Bible.  R. 50.

In 2001, Martin started drinking but it did not help her condition.  She became more depressed, so she stopped.  R. 50-51.  She did not take non-prescription drugs.  R. 51.

In response to the ALJ's first hypothetical question, the vocational expert testified that such a person could perform Martin's past relevant work as a fast food worker.  R. 53-54.  There were other jobs, for example unskilled dishwasher, that such a person could perform.  R. 54.  If a sit-stand option were added, there were jobs that such person could perform.  R. 54.  If the residual functional capacity were reduced to sedentary, there were jobs that such a person could perform.  R. 54-55.

If the position was restricted to no more than superficial interaction with the public or co-workers, there were no positions such a person could perform.  R. 55.

c.   **Medical Evidence**.

In her disability reports, Martin reported that she received medical treatment from: (1) Algiers Fisher Behavioral Health Center ("Algiers Fisher") in 2005 for high blood pressure and obesity, with her last visit in 2007; (2) Charity Hospital's emergency room in 1989 for depression; (3) New Orleans Mental Health Center in 2005 for depression; and (4) Dr. Sofjam Lamid in 2008 for back pain and depression.  R. 114-116 and 131-132.

There are no records from Charity Hospital, the New Orleans Mental Health Center or Dr. Lamid.

Algiers Fisher reported that: (1) Martin's case was opened on July 6, 1995, (2) she was discharged on October 20, 2000; (3) her last contact was on November 1, 1999; and (4) any records pertaining to her were either destroyed prior to Hurricane Katrina or lost in the hurricane.  R. 138. There were seven pages from the New Orleans Health Department.  On June 2, 2004, Martin needed a refill on her diet pills and blood pressure medication.  She reported pain in her lower abdomen. She was five feet four inches tall and weighed 318 pounds.  R. 143.  Her prescriptions were refilled. R. 144.  On October 27, 2004, she was seen for a sore throat and cough.  She was out of blood pressure medication.  She was diagnosed with hypertension and obesity.  R. 141.  Medication was prescribed.  R. 142.  On December 20, 2005, she was seen for tooth pain.  She reported that she resided in Texas.  She needed a refill for her medication.  It was noted that she had infected rotten teeth.  R. 139.  Medication was prescribed.  She was referred to a gynecologist.  R. 140.

On February 12, 2008, Martin's friend, Anastasia Francis, completed a third party function report. R. 119-26.

On March 5, 2008, Martin was seen by Dr. Miljana Mandich, a specialist in internal medicine, for a consultative examination. R. 147-154. He noted that: (1) Martin was markedly obese and appeared older than her stated age of 36; (2) she ambulated without difficulty; (3) the cervical, dorsal and lumbosacral spine demonstrated a full range of motion without pain or spasm; (4) the abdomen was obese with a low midline scar; (5) there was a ventral hernia; (6) cranial nerves were intact bilaterally; and (7) muscle bulk, tone and strength were preserved in all four extremities. Martin reported that the hernia had been present since her last C-section and a hysterectomy 15 years prior and it did not bother her. R. at 150. The diagnosis on the physical exam was obesity and hypertension. R. 148-150. The mental status exam revealed that: (1) she was oriented in four spheres; (2) she appeared to be of possibly lower average intelligence; (3) she felt the need to return to a mental health clinic; and (4) she had not had any treatment since before Hurricane Katrina. She was diagnosed with a history of major depression but no psychotic features at the time of the examination. R. 150.

On March 31, 2008, Anthony Scardino, M.D., a non-examining physician, completed a physical RFC assessment. R. 169-76. The only record reviewed was the report by Dr. Mandich. R. 176. The primary diagnosis was morbid obesity, and the secondary diagnosis was hypertension. Chronic low back pain was noted. R. 169. He opined that Martin could occasionally lift/carry up to 20 lbs., frequently lift/carry up to 10 lbs., stand and/or walk for 6 hours out of an 8-hour workday, and sit for about 6 hours out of an 8-hour workday with normal breaks. Tr. at 170.

On March 31, 2008, Robert McFarlain, Ph.D., a non-examining psychologist, completed a psychiatric review technique and a mental RFC assessment.  R. 155-168 and 177-180.  The only medical record cited was the report from Dr. Mandich.  R. 167.  Martin was assessed under Listing 12.04 for Affective Disorders.  R. 155.  Tr. at 155.  The diagnosis was depression.  R. 158.  She possessed a moderate degree of limitation in maintaining concentration, persistence or pace.  R. 165.  On the mental RFC assessment, Martin was moderately limited in three mental activities: (1) ability to maintain attention and concentration for extended periods; (2) ability to complete a normal workday and workweek without interruption; and (3) the ability to respond appropriately to changes in the work setting.  In all other activities she was found not significantly limited.  R. 177-180.

On December 29, 2008, Martin was seen by Dr. Velva Boles, an internist.  There is no evidence that Martin saw Boles before or after that date.  R. 182.  The evaluation is dated January 5, 2009.  R. 189.  Martin was referred to Dr. Boles by "Home Heath Agent" based on a diagnosis of depression and insomnia.  R. 182.  The results for the mental status examination were: well groomed appearance; good alertness; cooperative attitude; appropriate attention span; fluent speech; appropriate nonverbal behavior; upbeat mood; full affect; clear and coherent thought processes; coherent thought content; no hallucinations and delusions; appropriate memory; adequate intellectual functioning; and good insight/judgment.  R. 188.  Martin was diagnosed with depression, impulsive disorder, insomnia, morbid obesity and stressors caused by lack of family support and problems with children.  R. 189.  Tramadol and Effexor were prescribed.  R. 191.

On December 29, 2008, Dr. Boles completed a letter to the Commissioner.  She reported that:  (1) Martin had depression, anxiety attacks, insomnia and morbid obesity; (2) she was

11

precluded from being punctual, executing tasks of moderate complexity and following directions; and (3) Martin should receive disability benefits.  R. 181.

d.  **Plaintiff's Appeal.**

**Issue no. 1**.   Whether the ALJ failed to develop fully and fairly the administrative record.

Martin contends that the ALJ failed to develop fully and fairly the administrative record in three respects: (1) he failed to obtain medical records from NOLA Health Solution and Holistic Concepts which he knew existed; (2) he failed to contact Dr. Velva Boles of Holistic Concepts for clarification when he believed that there were inconsistences in her records; and (3) he failed to order a consulting examination by a psychologist or psychiatrist.

a.   <u>Records from NOLA Health Solution and Holistic Concepts</u>.

At the hearing Martin was asked if there was anything she wanted to add to the record.  R. 25.  She responded that she needed records from Holistic Concepts, including a letter from a "psychiatrist," and from NOLA Health Solution concerning her medication.  R. 27.  The ALJ stated that he would hold the case open until February 13, 2009, so that the medical records could be obtained.  He gave instructions to Martin on how to obtain them.  R. 27-28.  At the hearing the ALJ admitted into evidence Exhibits 1F through 5F.[2]  R. 29.

On or about January 20, 2009, the SSA received medical records dated January 5, 2009, from Dr. Velva Boles ®. 182-189 and 191) and a one page report of the medication prescribed for Martin for November and December 2008 from Louisiana Medicaid, Department of Health and Hospitals

---

[2]  These are: Algiers Fisher for June 2, 2004 through December 20, 2005(Exhibit 1F); report of the consulting examination by Dr. Mandich(Exhibit 2F); March 31, 2008 psychiatric review technique by Dr. McFarlain(Exhibit 3F); March 31, 2008 physical RFC assessment from Dr. Scardino(Exhibit 4F); and March 31, 2008 mental RFC assessment by Dr. McFarlain(Exhibit 5F).

®. 190).[3]  Exhibit 6F is the letter from Dr. Boles, dated December 29, 2008 on the Holistic Concepts stationary to the Office of Disability Adjudication and Review.  R. 181.  There is no indication as to when the SSA received the December 29, 2008 letter.

The records that Martin testified were needed to complete the record were added to the record with Exhibits 6F and 7F.  There is no evidence that there are any other records from Dr. Boles or Holistic Concepts.  The records from Dr. Boles demonstrate that Martin saw Dr. Boles for a physician evaluation on December 29, 2008.  R. 182.  They indicate that was Martin's first visit to Dr. Boles.  There is no reference to a return appointment.  R. 181-189.  Martin has not demonstrated the existence of other medical records from Holistic Concepts or Dr. Boles.  Since the ALJ's decision, Martin and her counsel have had ample opportunity to obtain such records.

The failure to develop the record results in a remand only if the failure to obtain the records prejudices the claimant.  Carey v. Apfel, 230 F.3d 131, 142 (5th Cir. 2000).  To establish prejudice, Martin must demonstrate that she could and would have adduced evidence that might have altered the result.  Id. at 142.  Martin has not demonstrated prejudice.

---

[3] See Exhibit 7F.  The top of each page demonstrates that it was faxed to or from the SSA Westbank New Orleans office on January 20, 2009.  R. 182-191.

b.      Clarification from Dr. Boles.

The ALJ stated that, "the severity alleged by Dr. Boles in her letter dated December 29, 2008, directly contradicts the findings of the mental status examination on that same day."  R. 16. Martin argues that because of this conclusion, the ALJ was required to re-contact Dr. Boles.

20 C.F.R. § 416.913(e) provides that:

> When the evidence we receive from your treating physician . . . is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision.  To obtain the information . . . [w]e will seek additional evidence or clarification from your medical source when the report from your source contains a conflict or ambiguity that must be resolved. . . ."

Id.  The Commissioner argues that the present record was adequate for the ALJ's determination, so there was no need to recontact Dr. Boles.

In response to a request for evidence, Algiers Fisher reported that Martin was discharged as a patient on October 20, 2000.  R. 138.  Records were produced for treatment on June 2, 2004, October 27, 2004 and December 20, 2005, but they do not refer to any complaints of depression or other mental illness.  R. 139-144.  On March 5, 2008, she was seen by Dr. Mandich.  She reported that she had not had any mental health treatment since before Hurricane Katrina.  Dr. Mandich diagnosed her with a history of major depression, but there were no psychotic features at the time of the mental status examination.  R. 150.  On December 29, 2008, she was seen by Dr. Boles at Holistic Concepts for a medical evaluation.  Rec. doc. 182.  Dr. Boles was not a psychiatrist; she is an internist.  Rec. doc. 16 at 5.  Dr. Boles' mental status examination did not record any psychotic features.  R. 188.  The conclusion is consistent with Dr. Mandich's examination.  The evidence received from Dr. Boles and Dr. Mandich was not adequate for the ALJ to determine whether Martin was disabled.  There was no need to contact Dr. Boles to obtain additional evidence or clarification.

14

      c.    <u>Additional consultative examination</u>.

The Commissioner obtained a consultative examination from Dr. Mandich. Martin contends that the ALJ was required to order a consultative examination by a psychologist or psychiatrist. Pursuant to 20 C.F.R. § 416.919a(b), "[a] consultative examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision. . . ." An examination is not required unless the record establishes that it is necessary to enable the ALJ to make the disability decision. <u>Jones v. Bowen</u>, 829 F.2d 524, 526 (5th Cir. 1987).

Martin submitted her application for benefits on January 29, 2008. She stated that her disability began on August 27, 2005. R. 89. She had earnings of $12,216.32 in 2007. R. 92. The ALJ found that she had not engaged in substantial gainful activity after she filed her application on January 29, 2008. R. 11. The hearing was on January 9, 2009. Between the filing of the application and the hearing, Martin was examined by two internists, Dr. Mandich and Dr. Boles. She did not demonstrate any psychotic features during their examinations. R. 150 and 188.

In the January 29, 2008 disability report, Martin did not report any treatment for depression after 2005. R. 111-118. In an updated disability report, Martin reported that she was seen by Dr. Sofjam Lamid in April 2008 for back pain and depression. R. 131. There are no records from Dr. Lamid. On February 19, 2008, Anastasia Francis, Martin's friend, completed a third party function report. She reported that she had known Martin for about ten years and spent an hour a day with her on a daily basis. They talked, shopped and prayed. R. 120.

The record does not establish that a consultative examination by a psychologist or psychiatrist was necessary to enable the ALJ to make the disability decision.

**Issue no. 2**.     Whether the ALJ applied the proper legal standards in evaluating the medical opinion evidence and whether there was substantial evidence for the ALJ's findings.

Martin contends that:  (1) the ALJ misstated the legal standards for determining whether a treating source opinion is entitled to controlling weight and applied improper standards; (2) the ALJ failed to provide specific reasons for the rejection of the treating source opinion; (3) the ALJ improperly concluded that Dr. Boles provided an opinion on an issue reserved to the Commissioner; and (4) the ALJ reported consideration of the state agency consultant opinions without providing an explanation of the weight accorded the opinion.  These arguments assume that Dr. Boles was Martin's treating physician.

 a. Was Dr. Boles a treating physician?

The deference accorded the opinion of a treating physician is demonstrated by Newton v. Apfel, 209 F.3d 448 (5th Cir. 2000), in which the Fifth Circuit stated:

> The opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability.  A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence.  The opinion of a specialist generally is accorded greater weight than that of a non-specialist.

Id. at 455 (citations and quotation marks omitted and emphasis added).  Martin contends that Dr. Boles was a treating physician and the ALJ improperly declined to give her opinions controlling weight.  The Commissioner contends that Dr. Boles was not a treating physician and the ALJ properly evaluated her opinions.

20 C.F.R. § 416.927 is concerned with the evaluation of opinion evidence.  Subpart (d) provides:

Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, <u>longitudinal</u> picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of <u>individual</u> examinations. . . .

20 C.F.R. § 416.927(d)(2)(emphasis added). "[T]he longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. <u>Id</u>. at § 416.927(d)(2)(i). In <u>Newton</u>, the Fifth Circuit described the factors to be considered before declining to give a treating physician's opinions controlling weight. Four of the six factors were: (1) the physician's length of treatment of the claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; and (4) the specialization of the treating physician. 209 F.3d at 456 (citing 20 C.F.R. § 404.1527(d)(2) and SSR 96-2p, 61 FR 34490 (1996 WL 362211)).

Dr. Boles saw Martin only one time. There was no treatment relationship beyond the December 29, 2008 examination. Martin was not scheduled for a return visit with Dr. Boles. Dr. Boles did not provide a longitudinal picture of Martin's condition. Martin has not attached any records of further visits to Dr. Boles to her motion for summary judgment. Dr. Boles is not a psychiatrist. She is an internist. The record contains an individual examination from Dr. Boles.

In defining a "treating source" the regulations state:

We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability. In such a case, we will consider the acceptable medical source to be a non-treating source.

20 C.F.R. 902. After the issuance of the December 23, 2008 notice of hearing set for January 9, 2008 (R. 74-81), Martin was seen by Dr. Boles on December 29, 2008 (R. 182). Martin sought Dr.

Boles' assistance in applying for SSI benefits.  R. 189.  Dr. Boles was a non-treating source.  Even if she is considered a treating source, the ALJ was not required to give her opinions controlling weight because there was no longitudinal relationship.

        b.      <u>Reasons for rejecting Dr. Boles' opinion</u>.

Martin contends that: (1) the ALJ failed to evaluate Dr. Boles' opinion in accord with 20 C.F.R. 416.927(d); (2) pursuant to this regulation, the ALJ was required to employ certain factors to evaluate Dr. Boles' opinion; and (3) the ALJ rejected the opinion of Dr. Boles without the required analysis.  The Commissioner is required to consider the factors enumerated in 20 C.F.R. § 404.1527(d)(2) before declining to give a treating physician's opinions controlling weight.  <u>Newton</u>, 209 F.3d at 456.  Martin's argument is premised on the assumption that Dr. Boles is a treating physician.[4]  The only difference between Martin's relationships with the two internists is that the Commissioner sent Martin to Dr. Mandich and Martin choose to go to Dr. Boles just prior to the hearing with the ALJ.  She had no longitudinal relationship with Martin, and she was not a treating source.  The ALJ was not required to consider the factors in 20 C.F.R. § 404.1527(d)(2) in the evaluation of Dr. Boles' opinion.

        c.      <u>Issue reserved to the Commissioner</u>.

The ALJ summarized the report of Dr. Boles' physical evaluation and the December 29, 2008 letter.  He stated that Dr. Boles "opines the depression and associated behavior precludes her from being punctual on a scheduled job, executing tasks of moderate complexity to completion and following directions without close supervision."  R. 15.  He reported that the record reflected a

---

[4] <u>See</u> Rec. doc. 15 at pages 28-31 ("ALJ failed to accord any weight to the opinion of Plaintiff's treating physician;" "he is not empowered to reject the opinion of Plaintiff's treating physician . . . without a proper . . . evaluation;" and "the ALJ rejected the non-conclusory opinion of the only treating physician. . .")

history of depression and, current problems with depression secondary to life stressors.  R. 16.  Dr. Boles' mental status examination did not record any psychotic features ®. 188) and it was consistent with Dr. Mandich's mental status examination ®. 150-151).  The ALJ found that Dr. Boles' opinion on the severity of Martin's condition was directly contradicted by her findings on the mental status examination.  Id.  The ALJ concluded that "not only was she (Dr. Boles) willing to assist the claimant in applying for SSI disability, but had greatly exaggerated the severity of the claimant's condition so that she may easily get these benefits."  Id.

The ALJ's decision to reject Dr. Boles' opinion concerning limitations on her ability to be punctual, perform tasks and follow directions was reached in the context of his refusal to accord controlling weight to the medical opinion of Dr. Boles.  There is substantial evidence to support the ALJ's conclusion.  Dr. Boles' letter of December 29, 2008 also contains a recommendation that she receive SSI.  This is an issue reserved to the Commissioner.  20 CFR §416.927(e).

d.    State agency consultants.

The ALJ stated that the conclusions of the state medical consultants were "treated as expert medical opinion evidence of a non-examining source."  R. 17.  He accepted their finding that the condition was non-disabling and stated that his "independent assessment reaches the same result. . . ."  Id.  Martin contends that: (1) the ALJ considered the state medical consultants without providing an evaluation or explanation of the weight accorded their opinions, (2) he appears to have accorded their opinions controlling weight even though they never examined Martin, they reviewed an incomplete record, and they cited little in support of their opinions.

Martin's argument is premised on the assumption that Dr. Boles is a treating physician.  See Rec. doc. 15 at 32-35.  But Dr. Boles was not a treating physician.  Martin also incorrectly argues

that the state medical consultants did not have records from an examining physician.  Rec. doc. 15 at 35.  The notes of the consultants reveal that they were in possession of the report of Dr. Mandich's examination.  R. 167 and 176.  There was substantial evidence to support the ALJ's findings concerning the opinions of the state medical consultants.

**Issue no. 3**.      Whether the ALJ applied the proper legal standards in evaluating Martin's credibility and whether there was substantial evidence for the ALJ's findings.

The ALJ made a finding that Martin had the residual functional capacity (RFC) to perform light work subject to certain limitations (R.12).  He described a two-step process for the consideration of her symptoms which required a finding on the credibility of Martin's statements concerning her limitations based on the entire record.[5]  R. 13.  After describing the evidence ®. 13-15), the ALJ stated that: (1) Martin's medically determinable impairments could reasonably be expected to cause her alleged symptoms; and (2) her statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent they were inconsistent with the light work RFC.  R. 15-16.

Martin contends that: (1) the ALJ did not provide a reasonable explanation for his finding that she did not comply with her hypertension treatment; (2) there was no evidentiary support that her obesity could be remedied by weight loss and anticipated surgery; (4) the ALJ's description of her testimony concerning her activities was inaccurate; (5) the ALJ failed to apply the factors found in SSR 96-7p, 1996 WL 375186 (S.S.A.); and (6) he failed to base his determination on the whole record.

---

[5]  This is in accord with SSR 96-7p, 1996 WL 374186, *2 (S.S.A.).

       a.    <u>Blood pressure medication</u>.

The ALJ concluded that the record reflected noncompliance with treatment for hypertension. He stated that she went "without medication for months at a time." R. 16.  Martin contends that: (1) the few periods when she ran out of medication do not reflect non-compliance but rather her poverty and depression related behavior which prevented her from leaving home to obtain her medication; and (2) she heard voices telling her that her medication was bad for her.  Red. doc. 15 at 37.

At the hearing Martin testified that for two months she had not been taking the medication for high blood pressure.  She reported that she was to receive a refill on the medication immediately after the hearing.  R. 37-38.  She testified that she took Tramadol almost every day for pain relief. R. 39.  She reported to Dr. Boles that she was taking Tramadol and Effexor.  R. 185.  Martin's friend reported that at least once a month she went to the grocery store and church meetings.  R. 121 and 122.  Martin testified:

> And (INAUDIBLE) having me scared to take my medicine.  But if I take my medicine, I'm feeling all right.  But it is like telling me the medicine going to make me die.  I'm going to die.  Something going to happen, something going to happen.

R. 43.  She was not sure it was a voice as it happened very quickly.  R. 43.  When she was examined by Dr. Boles, she reported no hallucinations or delusions.  R. 188.  She reported to Dr. Mandich that she took a blood pressure pill once a day, but she did not take it on the day of the examination.  R. 151.  She did not report to Dr. Mandich that she suffered from auditory hallucinations that discouraged her from taking medication.

There is substantial evidence to support the ALJ's finding that Martin failed to comply with her hypertension treatment.  She left the house regularly to purchase groceries.  She took Tramadol

for pain and Effexor for depression.  There is no evidence that poverty or depression prevented her from obtaining the hypertension medication.

       b.    <u>Surgery for weight loss</u>.

The ALJ stated that, "[s]he is anticipating surgery for a tummy tuck and breast reduction; however, doctor wants to check her blood pressure (has to be normal) for the surgery."  R. 13.  The ALJ concluded that future surgery is anticipated to remedy the obesity condition.  R. 16.  Martin contends that there is no evidence to support a finding that her obesity can be remedied by weight loss and the anticipated surgery.  Rec. doc. 15 at 37.  Martin testified that she wanted the surgery but the doctor said her blood pressure had to be controlled before she could have it.  R. 40-41.  There is no other evidence on the prospect of such surgery.  The determining issue is whether there was substantial evidence to support the ALJ's determination that Martin's obesity did not prevent her from performing light duty work.  This is considered under issue no. 4.

       c.    <u>Martin's activities</u>.

The ALJ stated that:

> The overall record does not support the claimant's alleged severity of her conditions. The claimant admits to numerous activities that required a considerable amount of physical exertion and attention and concentration as well (i.e., baby sits grandbaby 18 months old, prepares meals for children, reads Bible, etc.)  However, granting her the benefit of some doubt, it is determined that she has the residual functional capacity described herein.

R. 16-17.  Martin contends that this is an incomplete and inaccurate statement of her testimony.  She testified that she could do normal activities like cleaning and cooking.  When she was unable to do these activities, she called on her children to help her.  R. 33.  She reported that she could climb stairs, but she stayed on the third floor and when she went downstairs she was there to stay.  R. 46.  She answered that she took care of her 18 pound grandbaby and picked him up multiple times during

the day.  R. 45.  She spent a lot time reading the Bible.  R. 50.  Substantial evidence supports the ALJ's description of Martin's daily activities.

        d.      <u>Compliance with SSR 96-7p</u>.

      SSR 96-7p is concerned with the evaluation of symptoms under 20 C.F.R. § 404.1529.  The ruling and the regulation describe the kind of evidence that the ALJ must consider in addition to objective medical evidence when assessing credibility.  The regulation states that, "[f]actors relevant to your symptoms, such as pain, which we will consider include: (i) Your daily activities. . . ."  20 C.F.R. § 404.1529(c)(3). Other factors include intensity of pain, what precipitates the symptoms, effectiveness of medication, and any other measures used to relieve the symptoms.  <u>Id</u>.  The ALJ's decision ®. 13-17) demonstrates that most of these factors were considered.  There is discussion of her daily activities.  The ALJ described the intensity of Martin's pain.  For example, the ALJ records that she alleged she had lower back pain which required her to sit with her back up against something.  R. 13.  The ALJ noted that Martin did not know why she had panic attacks.  R. 14.  The use of medication to control her blood pressure and pain was discussed.  R. 13.  SSR 96-7p requires that "[a]ll of the evidence in the case record, including the individual's statements, must be considered before a conclusion can be made about disability."  1996 SL 374186, *5.  The ALJ's decision demonstrates compliance with this requirement.

      The ALJ applied the proper legal standards in evaluating Martin's credibility and there was substantial evidence for the ALJ's finding that her statements concerning the intensity, persistence and limiting effects of the symptoms were not credible.

**Issue no. 4**.      Whether the ALJ applied the proper legal standards in evaluating Martin's obesity
and whether there was substantial evidence for the ALJ's findings.

Martin contends that the ALJ failed to consider the combined effects of her obesity and other

impairments.  She urges that he failed to evaluate how her obesity exacerbated her depression,

hypertension and back pain.

The ALJ found that Martin had a severe impairment in obesity.  R. 11.  He stated that:

> The combined effects of obesity with impairments can be greater than the effects of
> each of the impairments considered separately.  The residual functional capacity
> assessment . . . takes the combined effects into consideration.

R. 12.  He cited SSR 02-1P, 2000 WL 628049(S.S.A.), on the evaluation of obesity.  This ruling

instructed him "to consider the effects of obesity not only under the listings but also when assessing

a claim at other steps of the sequential process, including when assessing an individual's residual

functional capacity."  Id. at *1.  The ruling notes that obesity is a risk factor that increases an

individual's chances of developing impairments in most body systems, for example cardiovascular

body systems.  Id. at*3.  In response to the question of how obesity is to be evaluated at step three

of the sequential process, the ruling provides that:

> [W]e will not make assumptions about the severity or functional effects of obesity
> combined with other impairments.  Obesity in combination with another impairment
> may or may not increase the severity or functional limitations of the other
> impairments.  We will evaluate each case based on the information in the case
> record.

Id. at *5 (emphasis added).

The Commissioner contends that the evidence is consistent with the ALJ's finding that

Martin could perform light duty work.  Martin testified that: (1) while she did not like to walk, she

could walk a mile ®. 43); and (2) she lifted her 18 pound grandchild multiple times during the day

®. 45).  Her friend reported that she could walk a good mile.  R. 124.  The field office reported that

24

she did not demonstrate any difficulty in breathing, walking, sitting or standing.  R. 108-109.  Dr. Mandich noted that she ambulated with no difficulty.  R. 151.  Neither he nor Dr. Boles noted any limitations that prevented her from performing light duty work.  R. 147-151 and 181-189.

Martin contends that the ALJ's hypothetical question to the vocational expert did not incorporate the exacerbating effects of her obesity on her depression, hypertension and back pain. This is not correct.  For example, the ALJ limited the RFC to only occasional climbing of ramps or stairs.  R. 12.

The ALJ applied the proper standards in evaluating Martin's obesity and there was substantial evidence to support the ALJ's findings.

## RECOMMENDATION

Accordingly, IT IS RECOMMENDED that defendant's cross-motion for summary judgment (Rec. doc. 16) be GRANTED and plaintiff's motion for summary judgment (Rec. doc. 15) be DENIED.

## OBJECTIONS

A party's failure to file written objections to the proposed findings, conclusions and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 13th day of December, 2010.

**SALLY SHUSHAN**
**United States Magistrate Judge**